Good morning, may it please the court. Chelsea Wilson on behalf of Richard Ruston. Mr. Ruston was convicted at a bench trial of various drug and gun crimes and as relevant here that included possession with intent to distribute five grams or more of methamphetamine actual. Among our issues on appeal are two issues related to the sufficiency of the evidence on that count and unless the court guides me otherwise I intend to focus on the second of those issues related to the proof on drug quantity. The proof that Mr. Ruston intended to distribute more than five grams of that methamphetamine. The government argues for the first time on appeal that Mr. Ruston intended to distribute that entire amount that he possessed the 5.69 grams he possessed and that is a change of position from trial that's not what they sought to prove at trial or the evidence that they offered at trial. In his opening statement at trial the prosecutor said that Mr. Ruston was a low-level drug dealer selling to finance his own drug usage and they put on extensive evidence that proved up Mr. Ruston's status as a drug user and a user of methamphetamine. That included user paraphernalia, he possessed syringes including a loaded syringe, distilled water for dissolving methamphetamine, cotton balls for shooting up. They also put on testimony that an amount up to three and a half grams might be consistent with personal use but the amount that Mr. Ruston possessed was indicative of somebody that is buying enough drugs to sell some of that off to basically support their habit. That was their detective's testimony. Counsel was the liquid meth in the loaded syringe included in the 5.69 grams? I don't believe it was. I don't, I am not, I'm not entirely sure when it was tested because I don't believe it's included in the lab report. It may have been field tested. I'm just not positive but I don't believe it is included in the 5.69 grams. Well when you say it's not included in the 5.69, the 5.69 is what was alleged in the indictment? Correct and also I don't believe that whatever quantity, I don't know what quantity is in that syringe because I don't believe it was quantity tested at any point and so the 5.69 grams comes from the two vials. There is the, it's not charged. Was the jury limited to the two vials? I think, or could it have considered the liquid? I think they can, I think Judge Wimes could consider the liquid in terms of what he believed it said about Mr. Rustin's status as a user or distributor but in terms of quantity, pardon? I'm not talking about the judge, I thought you were talking about the jury. Well he was, it was a bench trial. Yes sir, and however because we don't know anything about what quantity was dissolved in that syringe, I don't think there was sufficient evidence to include that in order to get over the hump here. Well, well the judge could have considered the amount in the syringe for personal use and the rest for sale though, right? I mean, that's a reasonable inference that could be drawn from the evidence. I don't think it was an inference that could be drawn from the evidence here beyond a reasonable doubt, Your Honor, because of the extensive evidence about the drug usage in this, about the drug usage in this case and because we just don't have any sort of indication of how much would be in there, whether that is, you know, a single dose, a day's worth, we don't have anything like that because I don't believe it was tested extensively. I'll confess I did not read the entire transcript of the trial. Sure. Was there testimony about how much Mr. Rustin was using daily? No, Your Honor, there was not. Their detective testified repeatedly that this evidence was indicative of someone selling drugs to finance his own habit, selling drugs to basically get his drugs for free, selling enough just to get by. And the district court seems to have adopted that selling and using theory. He cited to two portions of Detective Mata's testimony, the testimony that indicated a user who sells small quantities, excuse me, that the evidence indicated a user who sells small quantities to sustain his personal use and that it also indicated intent to sell some portion of the methamphetamine. The district court, however, does not really engage with the quantity issue, unfortunately, in the findings and conclusions. Those are at document 87 and the relevant paragraph is found on page 6. He goes on to talk about various evidence he believes indicates distribution in this case, the gun, the scale, the baggies, and he says that's indicative of drug distribution as testified to by Detective Mata, but then he closes by saying, therefore, the court finds the government proved beyond a reasonable doubt that Rustin knowingly possessed over 5 grams of meth and had the intent to distribute it. And I think if the court reads that paragraph, that conclusion regarding the quantity just doesn't follow from what the court cites. It seems those two issues were just collapsed together. The government cites a couple of cases that it believes speak to this issue and favor them, but neither of those cases actually involved a quantity issue like this. The Gentry case, Ms. Gentry had a pickle jar that had 92 grams of a liquid solution that could have been converted to methamphetamine, and she made two arguments on appeal. One was that that entire 92 gram quantity should not be considered a mixture or substance and therefore that the government did not prove the 50 gram threshold in that case. And then second, that they failed to prove intent to distribute the jar's contents at all. This was in part because everyone conceded that this would produce a user amount of methamphetamine. So the quantity issue in that case was tied up in that mixture or substance issue. It's not the issue we have here. Same with Campos. The government points to Campos because there the quantity was 50.6 grams of methamphetamine, and the government says that if marginal personal use was not enough there, then it's not enough here. But again, the quantity threshold was not at issue in that case. Mr. Campos throughout the litigation maintained that he intended to distribute none of that, that the entire 50.6 grams was his, and so that just was not an issue on appeal. He hadn't raised that in his motion for judgment of acquittal or motion for new trial. The government does cite a case that actually involved this issue. They cite it as to the broader intent issue and then ignore it when we get to the quantity issue, and that's because I think it shows you the type of evidence that the government should present when they put on a borderline case like this where there is evidence of potential drug use. That case is the McClellan case that they cite in their brief. There they found 6.45 grams of crack cocaine among some other drugs, and there were several crack pipes in the house that would be used for consuming crack cocaine. And so in order to prove that Mr. McClellan intended to distribute the entire 6.45 grams and did not intend to use it, they put on witnesses who testified that although they had used drugs with him before, they'd never seen him use crack cocaine. They put on a witness who said she had seen him distribute crack every day. They put on a detective or agent who testified that that quantity was associated with distribution, period, not distribution to support a habit. And they put on 404B evidence of prior distribution. That is the type of case the government needs to present when they put on, when they decide to charge a Here, a rational fact finder has no choice but to reasonably doubt whether Mr. Rustin intended to distribute more than the 5 grams of methamphetamine. I'll reserve the rest if the court has no further questions. Very well, thank you for your argument. All right, Mr. Hurst, we'll hear from you. May it please the court, Ben Hurst for the review of this case would work and how it differs from what the district court was presented with as the fact finder in this case. Here, the question is not, does this court agree, would it have found the same result in the first instance, but rather, thank you, I hadn't even looked at it, but whether any rational fact finder could have gotten to this result. And I think that's the point of the Gentry case that we presented to the court, is it just explains and helps give some context or substance texture to what this court's review looks like. It's not about whether this court would reach the same conclusion in the first instance. The second point on the Senate review is I'd like to point out that the jury, or in fact, this bench trial verdict, fact finder verdict, is entitled to all reasonable inferences. And that comes into play with a number of facts that we haven't discussed yet here today. The fact that the defendant had a gun. This court has said that's foremost in an evidence of intent to distribute. The fact that the defendant had scale. Now, is that capable of two inferences? Certainly. But it's primarily, in this case, because the judge found, beyond a reasonable doubt, more than intent to distribute, more than five grams, it's entitled to the inference that that is indicative of intent to distribute. And a few things that I should consider that weren't discussed earlier. Defendant's statements. He made a couple of statements that were highly indicative of intent to distribute. First, the defendant told the officer that he could purchase whatever amount he wanted. And the reason that the officer, the detective, asked that question is at that time, the detective was trying to figure out if the defendant would be a good candidate for cooperation. And we need to know in that instance, what's going to be unusual for this defendant if he tries to go make a controlled buy on behalf of officers. Well, here, he says, I could buy any amount. Now, any amount is indicative of an intent to distribute. It's indicative of prior distribution, which is indicative of intent to distribute. And furthermore, he said, I have, in fact, previously purchased an ounce or two. An ounce or two, of course, is quite a bit more than 5.69 grams. But the court could rely rationally on that evidence of intent to distribute in finding that the defendant intended to distribute more than 5 grams here. Mr. Hurst, can you point to definitive evidence in the record establishing that the meth in the loaded syringe was not included in the 5.69 grams? To me, that may be the definitive fact in this case. That's correct, Your Honor. It was not included. Well, you can tell me that, but is there something that... The stipulation, there are two exhibits in my mind that I may be getting. I'm confused. Exhibit number 20 is the lab report. The lab report says a crystalline substance, the pure meth, I'm sorry, that is 3.5 grams of methamphetamine pure, and a crystalline substance in another exhibit that's 2.19 grams of methamphetamine pure. So the two vials that made up the amount were 5.69, the 2.19 and the 3.5 were the crystalline substance. Those are exhibits 8 and 10. And in the appendix that we submitted with our brief is the stipulation, and the stipulation also says the two exhibits, 8 and 10, were the quantity that amounted to 5.69 grams. So while there's testimony in the trial transcript that the liquid in the syringe was methamphetamine, it's not included in the 5.69 grams of methaxyl that the judge was presented with as the quantity that we could prove in terms of methaxyl. I think that makes sense because he was charged with methaxyl. Clearly, I think it's fair to infer from the record, because of the testimony of how methamphetamine is prepared for injection, that the substance in the syringe, while including methamphetamine, was actually a mixture or substance. So that makes sense why that's not included. But I would say, Your Honor, I think that's indicative in terms of an argument that the court should have discounted for the personal use amount. I think the court should consider a couple of facts specifically relevant to that. One is, the personal use amount should first discount for the fact that he'd already loaded into the syringe the next amount that he would use. Two, evidence of testimony from the officer, the drug expert, that a typical daily user amount would be one quarter gram to one gram. If you consider that evidence, the court could have reasonably considered it. That's the amount of methaxyl that he possessed was between 22 doses and 5 doses. That's 22 days or 5 days of potential user amounts of drugs. And he told the officer that he hadn't used in the last two days. So the evidence in the record supports the inference that he was not even a daily user of methamphetamine. So if you put that together with the gun, the scale, statement that he had bought an ounce or two of drugs in the past, that he could buy whatever he wanted, that he knew two levels of drug dealers, all of that together supports the district court's conclusion here that the defendant intended to distribute the five grams or more. To me it seems like it's a standard of review case. This is probably the weakest possession with intent to distribute case I've ever seen. I think, I agree the standard review is highly relevant here, Your Honor, and that the court should not be putting itself in the position of Judge Wimes who heard the evidence and the testimony here, but rather considering whether what he did was rational or among the reasonable results in this case. I would just point to, Your Honor, both of those cases, Campos and Gentry, are cases that are similar in closeness. That's why they're discussed in our brief. So I take Your Honor's point, I understand the view there, but I also would say that the traditional evidence that we look for in a distribution case is here with respect to the gun, with respect to scales, with respect to... Well, I think the testimony was somewhat ambiguous and it could support either use or distribution. And so could a reasonable trier fact have concluded that it was distribution? And I, just to be clear, I don't think that the government ever took the position that he wasn't a user. The position was, as the grand jury alleged and as we had to prove at trial, that he intended to distribute five grams or more of methaxyl. So I would just disagree with my colleague that that was never presented before. That's what the indictment says. So when we go to trial on the indictment of five grams or more actual, that is exactly the question that's presented to the court. But we, at the same time, have never said that he wasn't a user. There was clearly his... I mean, there just was evidence of use here. But the question is, was the district court irrational in finding he intended to distribute more than five grams of the actual meth he possessed in light of all the evidence in the case? I'll use the district court was clearly not irrational in reaching that conclusion. Unless the court has additional questions on that, I'm also prepared to submit the remaining two issues on the briefs, but I'm happy to answer questions if the court has them. Fair enough. Thank you for your argument. Thank you, Your Honor. We'd ask the court to affirm. We'll hear rebuttal. Thank you. Respectfully, I think the government is trying to hang its hat on the evidence that goes to the broader intent to distribute, but does not actually speak to this quantity question of how much he intended to distribute. And I think they brought that on themselves, that question on themselves when they presented this case, that as Judge Gross said, was very equivocal as to, you know, this is someone who is using to support a habit. It could go either way. And the problem I see here is that because the evidence was of that nature, the district court was left to speculate, to operate by conjecture as to how much Mr. Rustin intended to use and how much he intended to sell. A couple of points on that. The last couple of days statement was the next day after the arrest, and Mr. Rustin was arrested in the morning of the day that he was arrested. So a couple of days ago would have been the day before the arrest, which does not at all suggest he's not a daily user. Also, the drugs in this case are not packaged up for resale. There are some baggies in there. Those baggies, the quantities that they would hold, would not hold these drugs. And we don't know the quantity that's in the syringe. And so I think the court cannot say, I don't think Judge Wimes could conclude beyond a reasonable doubt that because there's a syringe, that's how much he intends to use and no more. I just do not think, especially with their detective giving what is effectively expert testimony about this being someone who's using to support a habit, I think at that point that's a possibility, but it's a speculative one. It does not rise to the level. It sounds to me like this argument is like the old common law argument that the evidence was an equivocation and that at that point it's not sufficient to be proof beyond a reasonable doubt. I think, oh, go ahead. Is that really what your argument is? It is similar to that, yes, Your Honor. I think this court has case law that says if all that you can do is speculate or conjecture about which way the evidence goes, that that is not sufficient. That's not this court reweighing the evidence and substituting its own judgment. That is a proper standard of review here. So are you suggesting he should have been convicted of a lesser included offense? Yes, Your Honor. How would that affect the sentence? It would reduce the sentence. So it would reduce the mandatory minimum. There would be no mandatory minimum. And it would also, depending on what quantity Judge Wimes concluded was for use versus distribution, it could lower his guideline range by two or four levels or more. It would just depend on. The mandatory minimum, as I understand it, didn't drive the sentence here. The guideline range was substantially higher than 60. It was, but he received, I believe, a low end of the guideline sentence, if I remember correctly. I could be. I know it was a guideline sentence. And the guidelines would be significantly lower if on remand Judge Wimes drew conclusions. Why is that? Would any drugs that were destined for personal use be excluded? Yes, Your Honor. That's under Fraser. I see.  So I believe Judge Wimes would need to make some findings about how much he intended to use versus how much he intended to distribute. And then that would drive. You think we said in the Fraser case that personal use quantities are not part of relevant conduct, are not countable in quantity? That's correct. When you're not in a conspiracy case, at least. And we don't have a conspiracy count here. I believe that is what Judge Arnold's opinion in Fraser indicates. I see. Okay. Thank you for your argument. Thank you, Your Honor. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Counsel are excused.